```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
HARRY KLAMBOROWSKI,
o/b/o IRENE KLAMBOROWSKI

                          Plaintiff,           06-CV-6654T

           v.                                  DECISION
                                               and ORDER
MICHAEL O. LEAVITT, as Secretary of the
Department of Health and Human Services,
and SENIOR CHOICE, a Medicare Plus
Choice Organization,

                          Defendants.
_____
```

## INTRODUCTION

Plaintiff Harry Klamborowski on behalf of his late wife Irene Klamborowski ("plaintiff" or "Klamborowski") brings this action pursuant to Title XVIII of the Social Security Act ("Act") claiming that the Secretary of the Department of Health and Human Services ("Secretary") improperly denied plaintiff insurance coverage for oral surgery to remove fourteen teeth.[1] Specifically, Klamborowski alleges that the decision of the Secretary to reverse the decision of an Administrative Law Judge ("ALJ") who heard this case was erroneous because it was not supported by the substantial evidence contained in the record.

The Secretary moves for judgment on the pleadings on grounds that the Secretary's decision was correct, was supported by

---

[1] This case (formerly civil case 04-CV-0191-A) was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated December 27, 2006.

substantial evidence, and was made in accordance with applicable law.  Klamborowski opposes the defendant's motion.

## BACKGROUND

Plaintiff, now deceased, was a Medicare Part A and Part B beneficiary, who had elected to receive her Medicare benefits from Senior Choice, a Medicare Plus Choice ("M+C") organization. On December 28, 1998, plaintiff, at age 80, had a total laryngectomy performed by Dr. Haar, a Head/Neck Surgeon and Otolaryngologist, as she was diagnosed with an advanced form of throat cancer, Stage IV Squamous Cell Carcinoma of the Larynx.   Following surgery, Dr. Haar referred plaintiff to Dr. Norlund, a Radiation Oncologist, for post-operative radiotherapy.  Plaintiff underwent thirty-two radiation treatments between July 7, 1999 and August 24, 1999.  In order to cover all of the necessary lymph nodes, radiation was also applied to her salivary glands.  Plaintiff developed xerostomia, or dry mouth, and severe caries involving several teeth.  Plaintiff's primary care physician, Dr. Koleini, referred her to Dr. DiNardo, an oral and maxillofacial surgeon, who removed a total of fourteen teeth and two roots and performed three quadrant alveolectomies on June 15, 2000.  A fear of the Klamborowski's was that her decaying teeth were breaking off and loosening and, as a result of her esophagus narrowing due to radiation therapy, she could choke to death should a tooth or tooth fragment become lodged in her esophagus.

Senior Choice denied plaintiff's claim for Dr. DiNardo's services in August 2000 as non-covered dental services. Senior Choice again denied the claim on reconsideration in September 2000. In October 2000, the Center for Health Dispute Resolution issued a reconsideration determination upholding Senior Choice's denial of payment for the oral surgery.

After a hearing, ALJ James E. Dombeck issued a decision fully favorable to plaintiff in July 2001, granting coverage for Dr. DiNardo's services. ALJ Dombeck found that the oral surgery was medically necessary and that it was not clear to plaintiff that those services might not be covered and that plaintiff did not receive appropriate written notice of non-coverage.

Senior Choice appealed the ALJ's decision to the Medicare Appeals Council and they reversed the ALJ's decision in January 2004 concluding that the Senior Choice contract does not provide for coverage of dental services except as allowed under Medicare regulations, and that plaintiff's oral surgery did not fall into any of the recognized exceptions.

## DISCUSSION

A determination by the Secretary as to an individual's entitlement to Medicare benefits is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); <u>Ridgely v. Secretary</u>, 475 F.2d 1222, 1224 (4th Cir. 1973); <u>Gartmann v. Secretary</u>, 633 F.

Supp. 671, 679 (E.D.N.Y. 1986). The Secretary's findings should be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The Court has the authority to affirm, modify, or reverse the Secretary's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).

Title XVIII of the Social Security Act established the program of Health Insurance for the Aged and Disabled, commonly known as Medicare. 42 U.S.C. § 1395 et seq. Part A of the Medicare program which provides coverage for the costs of hospital and related post-hospital services. 42 U.S.C. § 1395c et seq. Part B of the Medicare program is an optional supplemental program financed from premiums by the enrollees and the government, which provides coverage for other types of medical services including the cost of physician services. 42 U.S.C. §§ 1395j et seq. Beneficiaries under the Medicare program include individuals aged 65 and over and disabled individuals who are also entitled to benefits under Title II of the Social Security Act. 42 U.S.C. § 1395j.

Part C of the Medicare program is known as "Medicare Advantage" or Medicare Plus Choice ("M+C"). 42 U.S.C. §§ 1395w21 - 28, 42 C.F.R. § 422. It was established by Congress in 1997 and allows eligible individuals to elect to receive Medicare benefits

through enrollment in health plans offered by "M+C organizations," which are private insurance companies who have contracted with CMS to provide a type of M+C plan in a particular service area. See 42 C.F.R. § 422.6; 63 Fed. Reg. 34,968.  Generally, an individual is eligible for enrollment in a M+C program if he or she is entitled to Medicare benefits under Part A and Part B.  42 C.F.R. § 422.50. M+C enrollees are entitled under C.F.R. § 422.100 and § 422.101 to receive coverage of all services that are provided under Medicare Part A and Part B.  In addition to the basic Medicare benefits, the M+C plan may offer additional supplemental benefits to its enrollees, as provided in 42 C.F.R. 422.102.

As a general rule, Medicare Part B does not provide coverage for dental services. 42 U.S.C. § 1395y(a)(12); See also 42 C.F.R. § 411.15(i).  The Act excludes from coverage "any expenses incurred for items or services-

> (12) where such expenses are for services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting teeth, except that payment may be made under Part A of this subchapter in the case of inpatient hospital services in connection with the provision of such dental services if the individual, because of his underlying medical condition and clinical status or because of the severity of the dental procedure, requires hospitalization in connection with the provision of such services....

42 U.S.C. § 1395y(a)(12).


The Medicare Carrier's Manual ("Manual") contains the

Secretary's interpretation of the Medicare statute and regulations. United States v. Weiss, 914 F.2d 1514 (2d Cir. 1990). "Such an administrative interpretation is ordinarily entitled to considerable deference unless it is plainly inconsistent with the clear meaning of the statute and regulations or unreasonable." Downtown Med. Ctr. v. Bowen, 944 F.2d 756, 768 (10th Cir.). The Manual, in Section 2136, provides:

> As indicated under the general exclusions from coverage, items and services in connection with the care, treatment, filling, removal, or replacement of teeth or structures directly supporting the teeth are not covered.... If an otherwise noncovered procedure or service is performed by a dentist as incident to and as an integral part of a covered procedure or service performed by him/her, the total service performed by the dentist on such an occasion is covered.

In this case, ALJ Dombeck determined that the dental services provided to plaintiff, as reflected in the medical records, met the requirements for exception from the dental services exclusion. According to the ALJ, the underlying reason for having the dental work done was to address the possibility that plaintiff's teeth would break off and cause her to choke to death due to her dilated larynx.

In reversing the ALJ's decision, the Medicare Appeals Council ("Council") found that the dental services provided to plaintiff were intended to address a dental problem, and were not incidental to or an integral part of a covered service. The Council concluded that the exception did not apply "because the services at issue were rendered subsequent to and as a result of radiation therapy,

and not in preparation of the jaw for radiation therapy.  In fact, neither the maxilla (upper jaw) nor mandible (lower jaw) were within the direct radiation field."  (Tr. 5)[2].

While I agree with the Council that the service was provided after the radiation therapy and that plaintiff's mandible and maxilla were not in the direct radiation field, the medical evidence clearly indicates that her salivary glands were affected by the radiation therapy.  That in turn led to plaintiff's xerostomia which led to severe dental caries.  Dr. Haar stated that plaintiff had excellent oral hygiene prior to the radiation therapy and opined that the extractions were carried out because of her cancer treatment.  (Tr. 24).  Dr. Norlund opined that the radiation therapy led to plaintiff's xerostomia and that the tooth extractions were medically necessary.  (Tr. 25).  Dr. Koleini also opined that the extractions were medically necessary as a result of plaintiff's radiation therapy incident to her laryngeal cancer. (Tr. 26).  Finally, Dr. Rosenthal stated that the extractions were necessary due to severe radiation caries caused by xerostomia. (Tr.27).

It is also clear that as result of her laryngectomy, her larynx was dilated.  (Tr. 56).  The laryngectomy and radiation procedures were both covered by M+C and, in this case, led to plaintiff's xerostomia.  Plaintiff's xerostomia led to severe

---

[2] Reference to the Administrative Record.

dental caries which caused her teeth to break off. (Tr. 166-67). In this case, the combination of plaintiff's dilated larynx and breaking teeth caused a life-threatening situation which had to be addressed by extracting plaintiff's teeth so as to remove the danger. (See Tr. 56, 158-60). Senior Choice agrees that the extractions were medically necessary but that they should not be covered under Medicare's dental exceptions. (Tr. 149).

The evidence supports the ALJ's findings that the dental services at issue were rendered as an integral part of the plaintiff's treatment for laryngeal cancer, and as such should be covered under the Medicare program. The remedial purpose of the Medicare program requires that it be broadly construed. Gartmann v. Secretary of U.S. Dept of Health, 633 F.Supp. 679, 680 (E.D.N.Y. 1986). "Care must be taken 'not to disentitle old, chronically ill and basically helpless, bewildered and confused people ... from the broad remedy which Congress intended to provide our senior citizens.' " Id. (quoting Ridgely v. Secretary of the Dep't of Health, Education and Welfare, 345 F.Supp. 983, 993 (D.Md.1972), aff'd, 475 F.2d 1222 (4th Cir.1973)).

Plaintiff had a total laryngectomy in December 1998. Radiation therapy took place several months later in July and August 1999. In March 2000, her primary doctor referred her to an oral surgeon regarding her deteriorating teeth. This timeline is within equitable notions of Medicare's remedial purpose as opposed

to similar dental services in <u>Bick v. Secretary of Health and Human Services</u> which took place over four years after the claimant there underwent radiation therapy. <u>Bick v. Secretary of Health and Human Services</u>, 1996 WL 393656 (C.D. Cal. April 8, 1996). This case is also clearly distinguished from <u>Wood v. Shalala</u>, relied upon by the Secretary, because in that case the claimant's teeth were removed prior to heart valve replacement surgery, and therefore, unlike this case, the decayed teeth were neither the result nor side-effect of a covered procedure. Nor did the decayed teeth in <u>Wood</u> pose a choking risk to the plaintiff, as did the teeth in this case due to the plaintiff's compromised throat tissue: tissue that was compromised as a result of the covered procedure. <u>Wood v. Shalala</u>, 94 F. Supp. 2d 1024 (W.D. Wis. 2000).

Accordingly, I find that the Medicare Appeals Council's determination is not supported by substantial evidence.

## **Conclusion**

For the foregoing reasons, defendant's motion for judgment on the pleadings is denied, the Secretary's decision is reversed, and the case is remanded to the Secretary solely for the calculation and payment of benefits due to the plaintiff.

ALL OF THE ABOVE IS SO ORDERED.

            s/Michael A. Telesca
             MICHAEL A. TELESCA
           United States District Judge

Dated:   Rochester, New York
      March 28, 2007